**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SCHWARZ PARTNERS, LP,<br>SCHWARZ STS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ADAM STROBEL,<br>NICK STROBEL,<br>DUSTIN SCHOOLMEESTERS,<br><br>Defendants. | ) | Case No. 1:24-cv-01238-TWP-TAB |
| ADAM STROBEL,<br><br>Counter Claimant,<br><br>v.<br><br>SCHWARZ PARTNERS, LP,<br>SCHWARZ STS, LLC,<br><br>Counter Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

This matter is before the Court on three motions: a Motion for Partial Summary Judgment on Amended Counterclaims (Filing No. 113) filed by Plaintiff Schwarz Partners, L.P. ("Schwarz Partners"); a Motion for Partial Summary Judgment filed by Plaintiff Schwarz STS, LLC ("STS") (Filing No. 114); and a Motion to Dismiss Amended Counterclaims as to Schwarz Partners, L.P. (Filing No. 121) filed by Defendant and Counter Claimant Adam Strobel ("Strobel"). In addition to granting Strobel's Motion to Dismiss, Schwarz Partners asks the Court to sanction Strobel and his attorneys for the procedurally and substantively improper Motion (Filing No. 126). The Plaintiffs initiated this action alleging various claims related to fraud and breach of contract, and

Strobel filed counterclaims. For the reasons stated below, Strobel's Motion to Dismiss Amended Counterclaims is **granted**, Schwarz Partners' Motion for Partial Summary Judgment is **denied as moot**, STS's Motion for Partial Summary Judgment is **granted in part and denied in part**, and Schwarz Partners' request for sanctions is **denied** with leave to refile a separate motion.

## I. BACKGROUND

Schwarz Partners is a privately owned limited partnership with its headquarters and principal place of business in Carmel, Indiana (Filing No. 72 at 3). Founded in 1998, Schwarz Partners and its affiliated companies provide corrugated packaging materials and products, transportation and logistics services, and sports apparel in the United States and Central America. *Id.* at 5. STS is a privately owned limited liability company ("LLC") with a principal place of business in Carmel, Indiana. *Id.* at 3. Strobel is an individual citizen of Indiana who resides in Fishers, Indiana. *Id.* at 4.

Schwarz Partners hired Strobel as its Chief Information Officer on April 29, 2019. *Id.* at 6. In 2022, Strobel was offered the opportunity to purchase membership units of STS. *Id.* at 35. STS was organized to engage in any business permitted under the Indiana Business Flexibility Act (Filing No. 70 at 21).

Strobel then purchased 250 units of STS (Filing No. 75 at 35). In connection with his purchase of the STS units, Strobel executed the STS Operating Agreement ("Operating Agreement") and the Transfer Restrictions Agreement (Filing No. 70 at 3). The Operating Agreement incorporates the Transfer Restrictions Agreement, and the parties agree that both agreements are valid and enforceable. *Id.* at 10.

The Transfer Restrictions Agreement limits to whom a member may transfer their STS units. *Id.* at 37. The Transfer Restrictions Agreement further provides that in the event of

termination of employment of any member of STS, whether for cause or without cause, STS may, in its discretion, purchase the units of the terminated member at any time after such termination at a value no less than the Cause Valuation. *Id.* at 39–40 ¶¶ 3.3(a), (b). The term "Cause Valuation" is defined as the lesser of (a) either the amount of such member's capital contributions with respect to such units and/or the purchase price paid by such member for such units, whichever is applicable, plus an interest rate of 2%, or (b) the member's adjusted tax basis in such units. *Id.* at 38 ¶ 2.1.

On July 9, 2024, Schwarz Partners terminated Strobel's employment, stating his termination was because he violated company business ethics policies and procedures (Filing No. 115-5). Pursuant to its right to repurchase Strobel's STS units, on July 23, 2024, STS informed Strobel that it was exercising the right to do so for $1.00 because it deemed the Cause Valuation to be negative $188,928.00 due to the company's annual net loss, as shown in the K-1 Forms STS issued (*see* Filing No. 115-7; Filing No. 115-9). Strobel refused, and continues to refuse, to sell his units to STS (Filing No. 75 at 37).

Indiana law governs the Transfer Restrictions Agreement (Filing No. 70 at 45 ¶ 7.9). The Operating Agreement states that "irreparable injury will result from a breach of any provision of this [Operating] Agreement and that money damages will be inadequate to remedy fully the injury." *Id.* at 14 ¶ 10.4. The Transfer Restrictions Agreement states,

> [I]rreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. . . . [T]he parties shall be entitled to an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically the terms and provisions hereof . . . , this being in addition to any other remedy to which they may be entitled at law or equity.

*Id.* at 45 ¶ 7.12. Strobel stated in his deposition that the Operating Agreement, which incorporates the Transfer Restrictions Agreement, "speaks for itself." (Filing No. 75 at 36).

The Operating Agreement also requires the manager of STS to maintain "complete and accurate books and records" of STS and make them "available at [STS's] principal office for examination by any [m]ember . . . at any and all reasonable times during normal business hours." (Filing No. 70 at 29 ¶ 9.2.2). It is unclear whether Strobel requested that STS make its books and records available to him; Strobel states that STS has not done so but only cites to his attorney's declaration stating that the attorney served STS with a set of interrogatories (Filing No. 122 at 4 ¶ 9 (citing Filing No. 123-1 at 1–2)).

Strobel holds a minority 3.57% membership interest in STS and has never received a profit distribution from STS (Filing No. 122 at 5).

## II. <u>LEGAL STANDARD</u>

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation modified). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific

factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III. DISCUSSION

This case arises from Plaintiff's claims of a multi-year scheme by Strobel to use his position as an officer and employee of Schwarz Partners to defraud, steal, and misappropriate the assets of Schwarz Partners for their own personal gain and benefit. Strobel has filed counterclaims alleging that Schwarz Partners committed defamation under Indiana law by publishing false statements accusing him of theft, fraud, criminal conduct, and unethical conduct, which damaged Strobel's reputation, employment opportunities, and standing in the community, and breach of contract. (Filing No. 70). He brings counterclaims against STS for breach of contract, declaratory judgment accounting, and judicial dissolution. *Id*.

The Court will discuss the pending Motions in two distinct Sections: (A) Dismissal of Certain Counterclaims and Schwarz Partners' Request for Sanctions and Schwartz Partners Motion for Partial Summary Judgement; and (B) STS's Motion for Partial Summary Judgment.

## A. Dismissal of Certain Counterclaims and Schwarz Partners' Request for Sanctions

Strobel's First Amended Verified Counterclaim alleges the following counterclaims against Schwarz Partners: Count I: Defamation; Count II: Intentional Infliction of Emotional Distress; Count III: Breach of Fiduciary Duties and Willful Misconduct and Recklessness; Count IV: Abuse of Process; Count V: Tortious Interference with Contract; and Count VIII: Breach of Fiduciary Duties (Filing No. 70).

Strobel asks that the Court dismiss his counterclaims made against Schwarz Partners with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) (Filing No. 121). A Rule 41(a)(2) motion is not the proper procedure for dismissing Strobel's counterclaims against Schwarz Partners, as the Seventh Circuit has expressly stated that Rule 41(a) "does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action'—which is to say, the whole case." *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015) (quoting *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 777 (7th Cir. 2001)). Instead, the proper procedure for dismissing Strobel's counterclaims against Schwarz Partners is under Rule 15(a)(2), which permits amendment to remove claims with the opposing party's written consent or the court's leave, which the court should freely give "when justice so requires." *See id.* (quoting Fed. R. Civ. P. 15(a)(2)).

Strobel did not request the court's leave or opposing party's written consent before filing his motion. But in its briefing in opposition to Strobel's motion to dismiss counterclaim, Schwarz Partners agrees that the Court should permit Strobel to dismiss his counterclaims against it because the claims are meritless (Filing No. 126 at 2). The Court considers Schwarz Partners' agreement as written consent sufficient to dismiss the counterclaims against it, pursuant to Fed. R. Civ. P. 15(a)(2). Accordingly, Strobel's motion to dismiss is **granted,** and Counts I, II, III, IV, V, and VIII

of Strobel's Amended Counterclaims, alleged against Schwarz Partners, are **dismissed with prejudice**.

In addition to Schwarz Partners' agreement to dismissal of Strobel's counterclaims against it, embedded in Schwarz Partners' Response to Strobel's Motion is a request that the Court sanction Strobel and his attorneys pursuant to the Court's inherent authority (Filing No. 126). Schwarz Partners argues that because Strobel failed to withdraw those "worthless claims" after the close of discovery, instead causing Schwarz Partners to expend fees and costs for briefing and filing a summary judgment motion, monetary sanctions should be imposed (Filing No. 126 at 2-3).

Strobel did not respond to Schwarz Partners' embedded request for sanctions. This omission is understandable, given that Local Rule 7-1 requires any motion to be filed separately with an accompanying proposed order allowing opposing counsel time to respond. Specifically, "a motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court." S.D. Ind. L.R. 7-1(a). Accordingly, the Court **denies** Schwarz Partners' request for sanctions but **grants leave to refile** the request via a separate motion. If Schwarz Partners does file such motion, an accompanying itemization of its fees and costs associated with the requested sanctions should be attached, so that Strobel may respond and the Court can properly rule on the motion in its entirety.

Because all counterclaims against Schwarz Partners have been dismissed with prejudice, Schwarz Partners' Motion for Summary Judgment on Strobel's Amended Counterclaims is **denied as moot**. The remaining four Counts of Strobel's Amended Counterclaims—Counts VI, VII, IX, and X—are alleged against STS and are discussed below in STS's Motion for Partial Summary Judgment.

**B. <u>STS's Motion for Partial Summary Judgment</u>**

STS moves the Court to grant summary judgment in its favor on Count X: Claim for Specific Performance, of its Second Amended Complaint against Strobel (Filing No. 117). STS also moves the Court to grant summary judgment in its favor and against Strobel on his remaining counterclaims: Count VI: Breach of Contract; Count VII: Declaratory Judgment; Count IX: Accounting; and Count X: Judicial Dissolution. *Id.* The Court will first address STS's claim against Strobel before turning to Strobel's remaining counterclaims.

**1. <u>Count X of the Second Amended Complaint</u>**

STS requests that the Court enter summary judgment in its favor on its specific performance claim—Count X—and require Strobel to specifically perform the Operating Agreement by transferring his STS units to STS (Filing No. 117 at 10). STS contends that whether Schwarz Partners terminated Strobel with or without cause, it is undisputed that STS has elected to redeem Strobel's STS units, Schwarz Partners provided Strobel with written notice of such election, and the contract thus requires Strobel to transfer the STS units. Even assuming Schwarz Partners terminated Strobel without cause for the purposes of this Motion only, it is undisputed that STS may elect a price no less than the Cause Valuation to effectuate the transfer. *Id.*

STS seeks summary judgment in its favor for three reasons: (1) the parties have an enforceable contract; (2) monetary damages are inadequate relief; and (3) STS elected to repurchase Strobel's STS units for $1.00. *See id.* The Court need not address the first two arguments, as both parties agree that the Operating Agreement is a valid and enforceable contract between STS and Strobel and that monetary relief is inadequate (Filing No. 70 at 32 ¶ 10.4 ("The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to remedy fully the injury."); Filing No.

75 at 36 ¶ 110 (Strobel's Answer to the Second Amended Complaint where Strobel admits that he signed the Operating Agreement and "admits the [Operating] Agreement speaks for itself.")). Instead, Strobel focuses solely on STS's argument that it elected to repurchase Strobel's units for $1.00, challenging the dollar figure.

The Operating Agreement contains provisions for members of STS with STS units to have certain rights and duties associated with overseeing the affairs of STS (*see* Filing No. 70 at 37), and limits to whom a member may transfer units causing there to be no open market for the units. *See id.*; *see also Krukemeier v. Krukemeier Mach. & Tool Co., Inc.*, 551 N.E.2d 885, 890 (Ind. Ct. App. 1990) ("Because there is no market, it is difficult and speculative to value a close corporation's shares."). The Court will therefore focus its inquiry on the repurchase price of the STS units.

STS contends that even if Schwarz Partners terminated Strobel without cause—which STS assumes solely for the purposes of its Motion—it is undisputed that Schwarz Partners, as Manager of STS, retains discretion to name the redemption price, so long as it is not less than the Cause Valuation (Filing No. 117 at 14 (citing Filing No. 70 at 40 ¶ 3.3(b))). STS designates a Declaration from Schwarz Partners' Senior Director of Tax, Shane A. Garlock ("Garlock"), who opines the Cause Valuation is negative $188,928.00, and thus, STS reasonably valued Strobel's units at $1.00 because that is the positive full dollar amount closest to the Cause Valuation. *Id.* (citing Filing No. 115-6 at 4).

In response, Strobel contends that STS cannot establish a proper valuation for which he should be paid for his shares as a matter of law because Garlock's opinion that the Cause Valuation is negative $188,928.00 is inadmissible, undisclosed expert testimony. He argues her opinion requires specialized accounting and tax knowledge and therefore constitutes expert opinion

testimony under Rule 702 rather than lay opinion testimony under Rule 701. Strobel argues that STS failed to disclose Garlock as a testifying expert as required and Rule 37(c)(1) therefore bars her opinion. Lastly, Strobel asserts that even if considered, Garlock's Declaration independently fails Rule 56(c)(4)'s foundation requirement (*see* Filing No. 122).

STS replies that Garlock offers fact testimony based on her personal knowledge of STS's finances, so her testimony is that of a lay witness (Filing No. 125 at 6). Garlock was simply deploying basic arithmetic of addition and subtraction and merely describing the math she applied to financial documents she regularly created, accessed, and used while employed by Schwarz Partners in 2023 and 2024. *Id.* at 7. The Court is not persuaded.

"The Federal Rules of evidence distinguish between expert and lay testimony." *United States v. Fung*, 183 F.4th 566, 574 (7th Cir. 2026) (citing *Patterson v. Baker*, 990 F.3d 1082, 1085 (7th Cir. 2021)).

> Under Rule 701, a witness not testifying as an expert may offer testimony in the form of an opinion when the testimony is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

*Id.* (quoting *Chi. Joe's Tea Room, LLC v. Village of Broadview*, 94 F.4th 588, 597 (7th Cir. 2024)). "The opinion must draw upon the witness's personal knowledge, and the witness must testify 'in terms of what they saw, heard, or did in particular circumstances' and not tether their inferences to 'any specialized training or experience.'" *Id.* (quoting *Patterson*, 990 F.3d at 1085).

In contrast, Rule 702 governs the admissibility of expert witness testimony that draws on "scientific, technical, or other specialized knowledge to help the finder of fact understand evidence or to determine a fact at issue." *Patterson*, 990 F.3d at 1085. "Such testimony can come only from a witness who is qualified to offer the opinion at issue and 'will help the factfinder understand the evidence, finds support in sufficient facts or data, and reflects the product of reliable methods or

principles, reliably applied to the facts of the case.'" *Fung*, 183 F.4th at 574 (quoting *United States v. Thomas*, 970 F.3d 809, 813 (7th Cir. 2020)).

"The line between expert and lay testimony 'is not always sharp.'" *Id.* (quoting *Chi. Joe's Tea Room*, 94 F.4th at 596). "[L]ay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Christian*, 673 F.3d 702, 709 (7th Cir. 2012). Accordingly, the distinction "is not between expert and lay *witnesses*, but rather between expert and lay testimony." *United States v. Fenner*, 142 F.4th 510, 517 (7th Cir. 2025) (emphasis in original) (citation modified). As such, a witness who is considered an expert for certain purposes may nonetheless offer lay opinions based on her personal knowledge. *Fung*, 183 F.4th at 574. "To decide on which side of the evidentiary line testimony falls, [courts] inquire into 'the nature of the testimony itself.'" *Id.* (quoting *Chi. Joe's Tea Room*, 94 F.4th at 596).

Here, Garlock equates a K-1 form's "ending capital account"—a tax-reporting concept with its own calculation under the Operating Agreement—with the Transfer Restrictions Agreement's separately defined term "adjusted tax basis" to determine that the Cause Valuation is negative $188,928.00. This is not a matter a lay witness may simply observe or recite from a business record. Garlock's Declaration does not offer personal knowledge of a business event but rather a technical explanation of why two seemingly separate terms contained in the Operating Agreement are equivalent based on the components used to calculate the value of each.

For example, the opinion states that "adjusted tax basis in units" is comprised of the following components: "the Company's net income, net losses, capital gains, deductions, and credits." (Filing No. 70 at 22 ¶ 3.1.2). The term "ending capital account" is comprised of the following components: "beginning capital account, capital contributed during the year, current

year net income (loss), other income (decrease), [and] withdrawals and distributions." (Filing No. 115-6 at 26). While Garlock purports to equate the two terms based on her personal knowledge, a lay person without any tax or accounting expertise would not know that the two terms are the same.

As another example, STS points the Court to the box titled "Partner's Share of Current Year Income, Deductions, Credits, and Other Items" on Strobel's 2023 K-1 form arguing that the figures contained in that section map the line items of "adjusted tax basis in units." But that section contains the following figures for the corresponding boxes: "-373,155" in the "Ordinary business income (loss)" box; "13" in the "Ordinary dividends" box; and "519" in the "Tax exempt income and nondeductible expenses" box. *See id.* STS contends that when combined, these figures clearly map the "Current year net income (loss)" figure which comprises the "ending capital account" term; this figure is "-373,661." But the only way to get to "-373,661" from the three figures in the righthand box—"13," "519," and "-373,155"—is by subtracting "519" from "-373,155" and then adding "13." It is unlikely that a lay person would be able to glean such information from the 2023 K-1 form, and even if they could, it would likely be the result of simple trial and error until the figures match. And that does not even account for the figures of "13" in the "Other information" box and "906,405" in the unnamed "AG" box also found in the "Partner's Share of Current Year Income, Deductions, Credits, and Other Items" section. All of that further fails to account for the fact that "ending capital account" requires an initial "beginning capital account"—which appears nowhere in the definition of "unit" or "adjusted tax basis in units"—to come to the resultant figure of "-188,928," which STS and Garlock contend is the correct Cause Valuation figure.

The level of expertise in tax and accounting principles required to glean the above information from a simple business record far exceeds that of a lay witness. Such testimony does

not result from the "process of reasoning familiar in everyday life." *Christian*, 673 F.3d at 709. Accordingly, Garlock's Declaration constitutes expert opinion testimony.

Having determined that Garlock's Declaration constitutes expert opinion testimony under Federal Rule of Evidence 702, the Court also finds that this testimony must be excluded under Federal Rule of Civil Procedure 37(c)(1). Rule 26(a)(2)(A) mandates that, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). For witnesses who do not need to provide a report of their testimony, the disclosure must state: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).[1]

The Case Management Plan states the following,

> . . . [I]f a party intends to use expert testimony in connection with a motion for summary judgment to be filed by that party, such expert disclosures must be served on opposing counsel no later than 90 days prior to the dispositive motion deadline. If such expert disclosures are served the parties shall confer within 7 days to stipulate to a date for responsive disclosures (if any) and completion of expert discovery necessary for efficient resolution of the anticipated motion for summary judgment. The parties shall make good faith efforts to avoid requesting enlargements of the dispositive motions deadline and related briefing deadlines. Any proposed modifications of the [Case Management Plan] deadlines or briefing schedule must be approved by the Court.

(Filing No. 58 at 4). STS's and Schwarz Partners' expert disclosure deadlines were extended to September 4, 2026 (Filing No. 108 at 2).

Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply

[1] The Court makes no determination as to whether Garlock was required to provide a report under the heightened Rule 26(a)(2)(B) requirements because Strobel's arguments proceed under the lesser Rule 26(a)(2)(C) requirements as if Garlock was not required to do so.

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004).

Here, neither STS nor Schwarz Partners disclosed Garlock as an expert witness, and the non-disclosure was not justified or harmless. STS appears to agree, given that it does not attempt to argue otherwise, instead arguing solely that Garlock's Declaration constitutes lay testimony. Accordingly, Garlock's Declaration must be excluded and thus may not be considered.

With the exclusion of Garlock's Declaration, a material issue of fact remains as to the correct Cause Valuation figure at which STS may elect to repurchase Strobel's STS units. STS contends that the Operating Agreement unambiguously states that the terms "adjusted tax basis in units" and "ending capital account" are the same and the Operating Agreement unambiguously provides a figure for the Cause Valuation, but again, the Court is not persuaded.

As explained above, despite STS contending that the various components and figures relating to both terms are equivalent both in value and meaning, they are anything but unambiguous. The Operating Agreement does not provide any language or reasoning by which the Court can determine as a matter of law that "ending capital account" means the same thing as "adjusted tax basis in units." And any attempt at determining the true "adjusted tax basis in units"—and the Cause Valuation—would be mere speculation.

Lastly, STS contends that even if the Court does not agree with its contractual arguments, Strobel asserts in his Amended Counterclaims that his adjusted tax basis is negative (Filing No. 125 at 9). STS argues that this means the Cause Valuation is negative and therefore, STS's election to repurchase the STS units for $1 is therefore not less than the Cause Valuation. STS asserts that

its repurchase attempt is proper and the Court should grant summary judgment and require Strobel to transfer his STS units to STS for $1.00.

The statement STS is referring to comes from Count X of Strobel's Amended Counterclaims which alleges in relevant part, "Strobel has been allocated a disproportionate share of STS's taxable income, resulting in a negative adjusted tax basis in his membership interest, and corresponding phantom income tax liabilities for profits never actually received." (Filing No. 70 at 15). While this allegation notes that the adjusted tax basis in his membership interest is negative, it appears to allege that it is negative only because STS has wrongfully allocated shares of STS's taxable income. Accordingly, this allegation on its own is not enough for the Court to find that no reasonable jury could conclude that the proper "adjusted tax basis in units" figure is positive. STS's Motion for Partial Summary Judgment is therefore **denied** as to Count X of the Second Amended Complaint. This claim will proceed to settlement or trial.

### 2. Count VI of the Amended Counterclaims

Count VI: Breach of Contract, of Strobel's Amended Counterclaims alleges that STS breached the Operating Agreement by "compelling the sale of the [STS] units, intentionally devaluing or miscalculating the valuation of the units to be sold, and/or misapplying the language of the Operating Agreement to the transaction to require Strobel to pay almost $190,000.00 to sell his units." (Filing No. 70 at 10).

STS contends that Strobel's breach of contract claim fails because the Operating Agreement, which incorporates the Transfer Restrictions Agreement, unambiguously provides for the disposition of units when a member's employment terminates, with or without cause (Filing No. 117 at 15). STS also argues that no jury would credit Strobel's claim that STS intentionally devalued or miscalculated the valuation of the units to be sold based only on his vague assertion

in his deposition that he "worked with internal people on [STS's] books – and it was actually producing income and [he] was greatly surprised to see it was not." *Id.* at 16 (quoting Filing No. 115-2 at 88:16–19). STS argues that the K-1 forms Strobel received establish a concrete rejection of his version of events and instead show that the company was operating at a net loss. Lastly, STS contends that Strobel could not explain what language STS allegedly misapplied, and he stated that the agreement speaks for itself. *Id.*

Strobel responds that summary judgment on this claim is premature because STS is the only party capable of determining whether it misvalued or miscalculated the amount owed to repurchase Strobel's units, but STS has withheld financial documents from Strobel (Filing No. 122 at 14). Strobel contends that the discovery necessary to prove or rebut the devaluation theory—STS's complete financial records—is the same discovery sought in Strobel's still-pending accounting counterclaim, Count IX. Strobel argues that STS should not be able to obtain judgment on Count VI: Breach of Contract for want of evidence while simultaneously resisting production of that very evidence. *Id.* at 15.

STS replies that Strobel's contention that summary judgment is "premature" on this claim is precisely why summary judgment is appropriate (Filing No. 125 at 11). After a year of discovery and multiple extensions, Strobel has only speculation. Garlock even appeared in person ready to testify at her deposition, but Strobel released her. Strobel even agreed to forego STS's written discovery responses regarding liability in return for Schwarz Partners' and STS's agreement to seek a limited extension of time to complete other discovery. *Id.* at 11–12. STS asserts that Strobel bears sole responsibility for his lack of evidence; he failed to timely serve discovery, then agreed not to pursue discovery, and then decided not to depose Garlock. In sum, without evidence, a jury could not find misvaluation of Strobel's units. *Id.* at 12. The Court agrees.

Whether STS miscalculated the amount owed to repurchase Strobel's units goes directly to whether STS is liable for breach of contract. After extensions, liability discovery closed on July 3, 2026 (Filing No. 108 at 2). Despite discovery on this issue being long-closed, Strobel contends that the Court should not enter summary judgment on his counterclaim because he speculates that STS has the financial documents needed to prove his claim. Yet Strobel made no attempt while discovery was open to pursue obtaining the documents or evidence he claims to need. Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (citation omitted). Strobel has designated no evidence and proffers only speculation. If Strobel believed he needed more evidence, he should have pursued such options afforded to him by the Federal Rules of Civil Procedure instead of declining to depose Garlock and failing to file discovery requests to obtain the allegedly necessary information.

Strobel references Rule 56(d) as a reason why the Court should not grant summary judgment on this counterclaim. Rule 56(d) states, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Strobel provides neither an affidavit nor a declaration and does not specify reasons as to why he cannot present facts essential to justify his opposition. Even if he submitted an affidavit, at this late stage in the proceedings, the Court will not reopen discovery. Strobel had time to pursue the allegedly necessary evidence, chose not to do so including not taking Garlock's deposition, and now contends that summary judgment is precluded because he did not obtain necessary information when he could have. Accordingly, STS's Motion for Partial Summary Judgment is

**granted** as to Count VI: Breach of Contract, of Strobel's Amended Counterclaims. This claim is **dismissed with prejudice**.

**3. Count VII of the Amended Counterclaims**

The parties agree that Count VII: Declaratory Judgment, of Strobel's Amended Counterclaims is duplicative, and any underlying substantive issues Count VII raises—namely, whether Strobel's termination was for cause, whether any repurchase obligation was properly triggered, and whether STS properly valued Strobel's ownership interest—remain disputed and are presented in Strobel's Count VI and by Strobel's opposition to STS's specific performance claim (Filing No. 122 at 15). STS replies that there is no need for the Court to dismiss Strobel's claims without prejudice as the parties agree that their substantive claims will resolve Strobel's requested declarations—either at summary judgment or at trial (Filing No. 125 at 16). STS asserts that once that occurs, there is no case or controversy for the Court to revisit via the Declaratory Judgment Act. *Id.* The Court agrees.

Strobel's Count VII is duplicative of other substantive claims in this litigation. The Court's resolution of the other substantive claims will therefore render this Count moot. Accordingly, the Court **grants** STS's Motion for Partial Summary Judgment as to Count VII of Strobel's Amended Counterclaims. This Count is **dismissed with prejudice**.

**4. Count IX of the Amended Counterclaims**

Count IX of Strobel's Amended Counterclaims alleges that Schwarz Partners owed Strobel a fiduciary duty, and he demands an accounting of virtually all financial records of STS including: reimbursed or claimed personal or business expenses, records related to the sale or provision of any products or services by STS; all records concerning compensation, wages, salary, bonuses, commissions, and consulting fees paid by STS; all records related to profit, dividends, profit-

sharing, allocations or losses attributed to STS; all bank statements, credit card statements, or other ledgers from accounts held, owned, related to or used for the benefit of STS; records of all capital contributions, loans, lines of credit or any other financial instruments related to the operations of STS; records of all debt obligations incurred on behalf of STS; and records of any loans, gifts, advances, or other disbursements or financial benefits conferred on any third party and made by STS (*see* Filing No. 70 at 14).

STS contends that Strobel has no basis to demand the extreme equitable remedy of an accounting (Filing No. 117 at 17). STS contends that his claim rests on two false premises: that Schwarz Partners owes him a fiduciary duty; and that no one would want to own a company losing money, although Strobel alleges the plan was for STS to turn a profit in February 2027. STS notes that Strobel showed a remarkable lack of sound judgment by preparing thousands of dollars' worth of invoices from his "sham" consulting company, Modern Cloud, to his employer, Schwarz Partners, which Strobel then approved for payment. STS argues that it would be particularly ruinous to allow such an unscrupulous person to inspect the financial records of STS, and Strobel cannot show a proper purpose to protect all members of STS. *Id.* at 18.

Strobel responds that STS's motion attacks the wrong standard and that his request comes from the Operating Agreement Section 9.2.2, which states that "[t]he books and records shall be maintained in accordance with sound accounting practices and shall be available at [STS's] principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours." (Filing No. 70 at 29). Strobel further contends that inspection has been allowed for similarly situated investors (Filing No. 122 at 17 (citing *Abdalla v. Qadorh-Zidan*, 913 N.E.2d 280, 287 (Ind. Ct. App. 2009)).

In reply, STS asserts that Strobel's accounting counterclaim rests solely on his factual theory that Schwarz Partners owed him a fiduciary duty, and his reframing of his equitable accounting claim as a contractual accounting claim should not be allowed (Filing No. 125 at 13). STS contends that Strobel's request is for comprehensive, court-supervised equitable accounting and an award of damages, not a request to inspect existing books at STS's principal office during normal business hours, and thus, even if raised timely, could not be based on the Operating Agreement. *Id.* at 14.

STS argues that regardless of the underlying facts, Strobel has forfeited his request for an accounting. He had a year to request the discovery he now purports to need, and he failed to timely pursue it and then *agreed* not to pursue it so that he could seek leave to take belated Rule 30(b)(6) depositions outside the liability discovery period. *Id.* at 14–15.

Neither of STS's arguments is persuasive. The Seventh Circuit recently held that "district courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend." *Schmees v. HC1.COM, Inc.*, 77 4th 483, 488 (7th Cir. 2023). The Seventh Circuit explained that it is possible "that an improbable confluence of events might justify constructive amendment. Such a confluence will be all but impossible for a counseled plaintiff to establish. Even so, only when the general principles governing amendment of a complaint are satisfied should constructive amendment be permitted." *Id.* at 489. The Seventh Circuit concluded that, "[i]n sum, a district court retains discretion to treat new claims presented for the first time in briefing as a constructive motion to amend. It will rarely be appropriate to do so." *Id.*

However, while plaintiffs may not amend their *factual* allegations on summary judgment, *legal theories* may be altered. *See Putnam v. CaramelCrisp, LLC*, 186 F.4th 898, 907 (7th Cir.

2026) ("Because a plaintiff need not plead legal theories, it follows that generally she can later alter those theories at summary judgment, absent any unfair or unreasonable surprise, delay, or difficulty posed to the defendant." (citation modified)). Here, Strobel asserts a new legal theory, as both his initial assertion—that he may demand an accounting because he is owed a fiduciary duty—and his new assertion—that he has a contractual right to demand an accounting—are questions of law for the Court to decide. *See Merchant v. Katz, Sapper & Miller, LLP*, 278 N.E.3d 1213, 1217 (Ind. Ct. App. 2026) ("Whether a duty exists is a question of law for the court to decide." (citation omitted)); *see also B&R Oil Co., Inc. v. Stoler*, 77 N.E.3d 823, 827 (Ind. Ct. App. 2017) ("Interpretation and construction of contract provisions are questions of law."). Accordingly, because STS does not claim any unfair surprise, delay, or difficulty with Strobel's change in legal theory, the Court finds that he may change his theory.

The Operating Agreement states the following:

> The Manager shall keep or cause to be kept complete and accurate books and records of the Company and supporting documentation of the transactions with respect to the conduct of [STS's] business. The records shall include, but not be limited to, complete and accurate information regarding the state of the business and financial condition of the Company, a copy of the Articles and this Agreement and all amendments thereto; a current list of the names and last known business, residence, or mailing addresses of all former or present Members; and [STS's] federal, state, and local tax returns.

(Filing No. 70 at 29 ¶ 9.2.1). The Operating Agreement further states, "[t]he books and records shall be maintained in accordance with sound accounting practices and shall be available at [STS's] principal office for examination by any Member or the Member's duly authorized representative at any and all reasonable times during normal business hours." *Id.* ¶ 9.2.2. While Strobel's request for an accounting does not contour perfectly with the Operating Agreement's definition of "books and records," STS does not address the merits of Strobel's contract theory, and the Court will not do so *sua sponte*. The Court therefore cannot say as a matter of law that Strobel has no right to an

accounting, and STS's Motion for Partial Summary Judgment is **denied** as to Count IX: Accounting, of Strobel's Amended Counterclaim.

**5. Count X of the Amended Counterclaims**

Count X of the Amended Counterclaims seeks judicial dissolution of STS, alleging that the actions of controlling members have effectively excluded Strobel from any meaningful participation in the financial benefits or governance of STS causing the continued operation of STS to be unfair, oppressive, and inequitable (Filing No. 70 at 16). Alternatively, Count X requests that the Court order that the majority members purchase Strobel's membership interest at fair market value as determined by the Court or an independent appraiser. *Id.*

STS seeks summary judgment in its favor because Strobel has no basis in law or fact for his counterclaim (Filing No. 117 at 18). STS notes that it was organized to engage in any business permitted under the Indiana Business Flexibility Act, which allows LLCs to organize for "any business, personal, or nonprofit purpose, . . . unless a more limited purpose is set forth in its articles of organization." *Id.* at 19 (quoting Ind. Code § 23-18-2-1(a)). STS argues that Strobel's own Amended Counterclaim states that he "would receive a significant financial gain from his investment over the next 5 to 10 years," *id.* (quoting Filing No. 70 at 3), and it has not yet been five years since STS's creation.

STS argues that the only evidence Strobel proffers is his speculation about STS in his deposition that "if it's losing that much money every year, I don't know why somebody would keep it," and "I don't know if they have somebody actually wanting to own it and keep it." (Filing No. 115-2 at 92:20–93:13).

Strobel responds that STS addresses only whether it is not reasonably practicable to continue operating the business, and his theory relies upon the oppressive conduct toward a

minority owner in a closely-held entity (Filing No. 122 at 19). Strobel argues that Indiana law recognizes that a controlling owner's oppressive conduct toward a minority owner in a closely-held entity can independently justify dissolution. *Id.* (citing *G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227 (Ind. 2001)). He contends that the redemption mechanism, controlled by the same insiders who set both the for-cause determination and the valuation, operates to force out the one dissenting minority owner at a nominal or negative price while those insiders retain control of and continue to benefit from the company. Strobel alternatively argues that the Court should order the majority members to purchase his interest at fair market value as determined by the Court instead of the value determined by the Operating Agreement and Transfer Restrictions Agreement. *Id.* at 20.

STS asserts that the Court has no equitable power to dissolve a company created by statute (Filing No. 125 at 15). Rather, the sole means by which the Court may dissolve an LLC is provided for in Indiana Code § 23-18-9-2. *Id.* STS contends that *G&N Aircraft* is distinguishable because that case involved direct claims arising from fiduciary duties between shareholders in a closely-held corporation. *Id.* (citing *G&N Aircraft*, 743 N.E.2d at 238). But here, Strobel disclaimed a fiduciary duty from Schwarz Partners in the Operating Agreement, which he has stated both speaks for itself and is valid and enforceable.

Here, the Court need not address whether it may dissolve STS under Indiana Code § 23-18-9-2 for STS being no longer reasonably practicable to continue operating because Strobel expressly states, "[t]hat is not the theory of relief Strobel's [Amended] Counterclaim presents." (Filing No. 122 at 18–19). Instead, Strobel relies solely on the theory that the Court may dissolve STS because of the controlling member's—Schwarz Partners—oppressive conduct. Yet Strobel designates no evidence of oppressive conduct. He vaguely argues that he holds a 3.57% interest

and has never received a distribution, but the K-1 documents show that STS was losing money each year evidenced by a negative dollar amount in the "Ordinary business income (loss)" box and the negative dollar figure for the "Current year net income (loss)" line on each of the 2022 and 2023 K-1 documents (*see* Filing No. 115-6 at 7, 26).

Strobel also claims that he "has been effectively excluded from meaningful participation in STS's governance and financial benefits" because the controlling member determined his termination was for cause and elected to repurchase Strobel's STS units as the Operating Agreement and Transfer Restrictions Agreement allows. But Strobel does not explain how terminating him for cause because STS believed he violated company business ethics policies and procedures is oppressive. He also fails to explain how STS electing to repurchase his units, which he expressly agreed to in the Operating Agreement and Transfer Restrictions Agreement, is oppressive. He merely states that the redemption mechanism provided for by the Transfer Restrictions Agreement operates to force him out of STS at a nominal or negative price.

Strobel's arguments do not concern oppressive conduct or judicial dissolution. It appears that Strobel does not like the terms of the Operating Agreement and Transfer Restrictions Agreement and wants the Court to circumvent those agreements despite his admissions and even affirmative assertions that such agreements are "valid and enforceable." (Filing No. 70 at 10). This is further evidenced by Strobel's "alternative prayer for relief" that the Court order STS to repurchase Strobel's STS units at a value determined by the Court rather than at the calculation provided for in the Transfer Restrictions Agreement. For obvious reasons, the Court will not circumvent such agreement because one party later decides that they do not like the resulting dollar amount despite agreeing to it beforehand. Accordingly, Strobel's request for judicial dissolution

and his request for alternative relief each fail, and STS's Motion for Summary Judgment is **granted** as to Count X of the Amended Counterclaims.

## IV. CONCLUSION

For the reasons discussed above, Strobel's Motion to Dismiss Amended Counterclaims (Filing No. 121) is **GRANTED,** and Counts I, II, III, IV, V, and VIII of the Amended Counterclaims against Schwarz Partners are **dismissed with prejudice.** Schwarz Partners' Motion for Partial Summary Judgment (Filing No. 113) is **DENIED as moot**.

STS's Motion for Partial Summary Judgment (Filing No. 114) is **GRANTED in part and DENIED in part**. Summary judgment is **granted** as to Counts VI, VII, and X of the Amended Counterclaims, and these claims are **dismissed** with prejudice. Summary judgment is **denied** as to Count X of the Second Amended Complaint and Count IX of the Amended Counterclaims.

Schwarz Partners' embedded request for sanctions (Filing No. 126) is **DENIED** with leave to refile a separate motion.

The surviving claims: Counts I through X of Plaintiffs' Second Amended Complaint and Count IX (Accounting) against STS of Strobel's Amended Counterclaims, remain pending for settlement or final pretrial conference on April 1, 2027 and trial by jury on April 26, 2027.

**SO ORDERED**.

Date: November 20, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

William J. Brinkerhoff
JESELSKIS BRINKERHOFF AND JOSEPH LLC
bjbrinkerhoff@jbjlegal.com

Briana Lynn Clark
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
briana.clark@dentons.com

K. Michael Gaerte
DENTONS BINGHAM GREENEBAUM LLP (Indianapolis)
michael.gaerte@dentons.com

Glen Emmett Koch, II
BOREN OLIVER & COFFEY
glenkoch@boclawyers.com

Melissa Anne Lindley
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
melissa.lindley@ogletree.com

Jason M. Massaro
The Massaro Legal Group, LLC
jmassaro@tmlglaw.com

Stephen A. Oliver
BOREN OLIVER & COFFEY
steveoliver@boclawyers.com

Caitlin S. Schroeder
Ogletree Deakins
caitlin.schroeder@ogletree.com

Susan M. Zoeller
Ogletree Deakins
susan.zoeller@ogletree.com